BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**JEFFREY S. SWEET, OSB #994183**
Assistant United States Attorney
jeff.sweet@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 6:18-cr-00065-AA |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| **STANLEY CARL GREEN,** | |
| Defendant. | |

### Introduction

Defendant Stanley Green robbed two banks in Oregon and one in Washington. He brandished a BB pistol in one robbery and in another brandished a box cutter and made the tellers kneel on the floor as he left. Green has three prior convictions for bank robbery and an escape conviction, and was on both federal and state supervision when he committed the robberies. Neither supervision nor deterrence has protected the public from Green's violent crimes. Accordingly, the United States recommends an upward variance to a 146-month sentence.

**United States' Sentencing Memorandum**                                                **Page 1**
                                                                                      Revised Aug. 2019

**Factual Background**

**A.    The Offense Conduct**

In December 2015, Green robbed the Olympia Federal Savings bank in Washington; he received $4,897.  Green was on escape status at the time of the robbery.  He was arrested for the robbery six months later and charged in state court.  Released on bond, Green fled to Oregon and a warrant issued.  (PSR ¶¶ 15-16).



In December 2017, Green robbed the Rogue Federal Credit Union in Port Orford, Oregon.  He brandished a box cutter, holding it up in the air for the tellers to see, and kept it in his left hand as he approached a teller.  His face partially masked with a towel, Green's statements to the tellers included, "I don't want to hurt anybody," and "Don't push any buttons, you don't want me locked in here with you," and, "I'm sorry."

Green instructed the tellers to get money from the vault but changed his mind when he realized how long it would take.  He ordered the tellers to kneel on the floor and wait ten minutes before calling the police.  (See photo on next page).  He fled on foot with $3,833.  (PSR ¶ 17).



Two days after Christmas, Green robbed the Columbia Bank in Waldport, Oregon. His face was partially covered and this time he brandished what appeared to be a handgun. Green made sure to display the gun, and one teller was



**United States' Sentencing Memorandum**                          **Page 3**

so scared and nervous that she forgot to give Green the bait money.  Another teller, who began to cry when giving her statement to the police, said that Green stated several times, "I don't want to hurt anybody," and he told them not to set off alarms until he had left the bank.  Green was apologetic during the robbery, and left with $2,840.  (PSR ¶ 18).

Green was found at a campground in Curry County and arrested on January 17, 2018.  Officers seized $848 and BB ammunition from his person and backpack, and Green admitted to the robberies as well as to a 2007 Salem robbery.  (PSR ¶ 19-20).  Green said that the gun he used in the Waldport robbery was a BB gun that he bought at Walmart.  While the gun was not located, his statement is consistent with the BB ammunition which was found.

### B. The Charges

Green was indicted with the two Oregon robberies on February 21, 2018.  Pursuant to the agreement reached by the parties, a November 26, 2018, information charged the Washington robbery as well as the Oregon robberies.

### C. The Plea Agreement & Guideline Computations

The United States agrees with the guideline calculations of the Probation Office, as set forth in the PSR.  Green has a criminal history category of VI and a total offense level 25, resulting in an advisory guideline range 110-137 months.  (PSR ¶ 97).  Pursuant to the plea agreement, the parties will argue a range of 120 to 188 months, and the parties may seek a departure, adjustment or variance to achieve the recommended sentence.  Provided that Green receives a sentence of at least 120 months' imprisonment, the Thurston County Prosecuting Attorney's Office in Washington State will dismiss their pending case against him for the December 18, 2015 robbery of the Olympia Federal Savings, case #16-1-00838-34.

**Argument**

**A.    Government's Recommended Sentence**

Green is a threat to the public.  When frustrated, he lashes out, absconds supervision and commits crimes, and his default crime is bank robbery.  This pattern of behavior helps explain his repeated failures on supervision and why he has struggled for so many years.  The government acknowledges that Green did not begin his criminal conduct until later in life, suffers from untreated mental health issues and that he genuinely regrets his conduct and wants to change.  But when he fails he endangers the public, and the public must be protected.

1.    Green's Pattern of Behavior Supports the Recommended Sentence

Green was crime free until, at the age of 37, he committed payroll theft while in the National Guard.  He was upset with a judge regarding child support and, in his words, he said, "To hell with it, I'm going illegal."  Best R. & R., p. 4 ¶ 2.  He was convicted and discharged in 1999, but under honorable conditions that allowed him to maintain his benefits.

Then, upset at the military for "ruining" him, he took the payroll roster when he was discharged.  Between 2002 and 2004, he fraudulently filed for unemployment benefits using former service members' identities from the roster.  *Id*., p. 5 ¶ 2.  This resulted in his federal conviction for mail fraud and a 33-month prison sentence.  While incarcerated, Green only completed 50 hours of the 200 hour RDAP program.  Once released from prison, he never gave supervised release a chance.  Within a week, Green robbed a bank, and then robbed three more over the next three months.

While incarcerated for these robberies, in 2008, Green discontinued his medications in order to become work camp eligible.  He subsequently walked off the work camp after the death

of a friend and was charged and convicted of escape.  (PSR ¶ 57).  He was released from prison in June of 2015.

From reading the chronology notes from the Washington state probation officer, at first Green did well on supervision.[1]  Probation worked with Green on housing and he stayed at the Oxford House on a Department of Corrections voucher which was good through early September.  Green's treatment at the VA is addressed in the chronology notes, as was his health, contacting the VA for assistance with medication and housing once his voucher ends, as well as his receipt of state disability and his plan to receive SSI.  The last meeting with Green, just days before he absconded around September 8, 2015, noted that Green had a positive attitude and that he had been helping another inmate.  While the process for obtaining SSI disability and housing was surely slower and more difficult than Green anticipated, he had resources available to him, and either failed to seek help from Probation and the VA, or gave up too quickly.  When Green absconded he made his situation worse—and when he robbed a Washington bank in December 2015 he further hurt himself and others.

Green successfully avoided arrest until May 2016 when he was arrested in Jackson County, Oregon, after which he appeared in court in Washington on the robbery.  He was released on bond, but again absconded from supervision and failed to appear for court.  Green

---

[1] Green's probation chronology notes are attached as Exhibit 1, which is being submitted via Prop docs instead of being publically filed. Notes from his most recent supervision, prior to him absconding, are between pages 20 through 10 of Exhibit 1, and read from back to front. The notes show the probation department working with Green on various issues and that he reported doing very well-even right up to the time he fled. The notes show a different relationship between Green and the Probation Department than that Green relayed at his change of plea.

**United States' Sentencing Memorandum**                                                                **Page 6**

managed to avoid arrest until January 17, 2018, when he was arrested for robbing two Oregon banks in December 2018.

Simply put, by failing to seek help, or by failing to give people enough time to help him, Green hurts his chances of success. Absconding only compounds the problem. Worse, Green lashes out at wrongs—real or perceived—and commits crimes. He told Dr. Best that before he committed the Oregon robberies, "I got mad at what happened to me," and noted that it was important that he never hurt anyone and only stole from banks and the federal government. This is apparently because, "The government ruined me." Best R. & R., p. 6 ¶ 3. But Green's crimes hurt tellers—and himself—the most.

    2.    <u>The Public Needs Protection from Green's Violent Crimes</u>

Green committed robberies in 2007, 2015 and 2017. He was on federal supervision during all of the robberies, and on state supervision for the 2015 and 2017 robberies. And his robberies have become more dangerous, as there is no record of him using a weapon until the last two.

In addition to robbing banks, Green has a pending Washington state case for harassment/threat to kill. (PSR ¶ 65). His ex-wife, who has a restraining order against Green, received the following letter from Green in November 2017, which was also sent to his ex-wife's sister

> To the Three West Witches. Have a good Christmas. It's your last. No one gets to wipe me out without paying the price and the bill has come due. Good luck finding me, if you or anyone try. I have a new identity and a new life. I travel freely anywhere I want and that includes [redacted] County, Stan.

Green added a handwritten line to his ex-wife's letter:

> You should have walked and left my money and future alone. What's next is all on you. Enjoy the wait. I am coming for you, count on it. I suggest running.

(PSR ¶ 65).

In sending the letter, Green wanted his ex-wife to feel powerless and vulnerable. He wanted her to fear for her life. Though they divorced more than twenty years ago in 1995, he still reached out and threatened her in November 2017. His actions reflect the desire to punish her and instill fear, and show an inability to move forward from the past. And prior to the above letter, Green's family member contacted Washington state Probation concerned for his family's safety and concerned about Green's harassment, as detailed in Exhibit 1, pg. 9.

3.  <u>Green's Mental Health Issues Must be Addressed But Do Not Warrant a Lower Sentence</u>

The PSR and Dr. Best's report detail Green's history of mental health evaluations and varying diagnoses for depression, anxiety, schizoaffective disorder and bipolar disorder, alcohol abuse and traumatic brain injury related issues. It is clear that his breakdown at work in 1993 played a prominent role in his struggles. Green reported doing well after being placed on multiple medications while in prison in Washington, but he stopped taking the medication so he could be eligible for work camp, and then walked away from the camp after learning that a friend died.

Green also reported being plagued by guilt over his conduct; his behavior during his crimes, and his confession afterwards, supports this. However, his actions show a recurring pattern of robberies despite his remorse. Green carefully planned his robberies, took steps to avoid identification and arrest, and did not turn himself in. He also twice used weapons, or what appeared a weapon, to ensure compliance, heightening the danger and stress on the tellers. This

**United States' Sentencing Memorandum**                                                              **Page 8**

is hardly a case of a person who commits a robbery and then sits and awaits arrest and a return to prison.

Green committed two armed robberies and threatened his ex-wife's life all within a month. While Green's mental health issues are well-articulated in his presentence report, his disregard for protection orders, history of evading law enforcement and escalating robbery attempts are a continuing public threat. To protect the public, he should be sentenced to 146 months' imprisonment, which reflects a one-level upward variance.

### B.     Restitution

Restitution should be ordered as follows:

| | |
|---|---|
| Olympia Federal Savings | $4,897 |
| Rogue Credit Union | $3,833 |
| Columbia Bank | $2,840 |

### Conclusion

The United States respectfully recommends a sentence of 146 months' imprisonment, three years of supervised release on each count, $11,570 in restitution, and a $300 fee assessment.

Dated: December 4, 2019

                                                                          Respectfully submitted,

                                                                          BILLY J. WILLIAMS
                                                                          United States Attorney

                                                                          s/ *Jeffrey S. Sweet*
                                                                          JEFFREY S. SWEET
                                                                          Assistant United States Attorney